**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10289 |
| Plaintiff - Appellee, | D.C. No. 2:15-cr-00632-DLR-1 District of Arizona, Phoenix |
| v. | |
| ERNESTO SANTOS-FLORES, AKA Ernesto Adan Santos-Flores, | ORDER |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Submitted to Motions Panel July 6, 2015

Before: SCHROEDER, CANBY, and KOZINSKI, Circuit Judges.

Defendant Ernesto Santos-Flores appeals the district court's order of detention pending trial. We have jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291. We hold that the district court erred in ordering pretrial detention based on the likelihood that, if released pending trial, Santos-Flores would be placed in immigration detention and removed from the United States,

precluding his appearance for trial. We affirm the district court's detention order, however, based on the district court's alternative, individualized analysis of factors that make Santos-Flores a voluntary flight risk.

Santos-Flores, a native and citizen of Mexico, is charged with one count of felony illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a), as enhanced by § 1326(b)(1). The government alleges that Santos-Flores was previously convicted of felony illegal reentry on November 19, 2014 in the United States District Court for the Western District of Texas, and sentenced to a term of time served plus one year of supervised release. The conditions of supervised release included not entering the United States without documentation and not committing any other crimes. Santos-Flores was then, on or about December 9, 2014, removed from the United States to Mexico pursuant to a reinstated order of removal. On March 30, 2015, Santos-Flores was apprehended by the Border Patrol in Maricopa County, within the District of Arizona. He presented the Border Patrol with three forms of false identification (a United States passport, birth certificate, and Social Security card) and claimed to be a United States citizen. The government conducted an immigration history check and determined that Santos-Flores was not a citizen and did not appear to have obtained authorization to return to the United States.

Santos-Flores was charged by complaint on April 1, 2015, and indicted (following an extension of time) on May 26, 2015. A magistrate judge of the District of Arizona issued an order of detention pending trial on April 8, 2015. Santos-Flores appealed, and the district court affirmed the detention order on May 26, 2015. This appeal followed.

Under the Bail Reform Act of 1984, as amended, Congress has determined that any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions, unless a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

Here, the government does not contend, nor did the district court find, that Santos-Flores poses a danger to any other person or the community pending trial. The district court found, however, that if Santos-Flores were released under the Bail Reform Act, he likely would be unable to appear at trial because he would be detained by United States Immigration and Customs Enforcement ("ICE") and removed from the United States. In the alternative, the district court found that his

3

alleged illegal reentry, violation of supervised release, and use of fraudulent identification documents indicated that Santos-Flores could not be trusted to obey a court order to appear.

On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). We review the district court's factual findings concerning whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required under a "deferential, clearly erroneous standard." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990)). The conclusions based on such factual findings, however, present a mixed question of fact and law. *See Hir*, 517 F.3d at 1086. Thus, "the question of whether the district court's factual determinations justify the pretrial detention order is reviewed de novo." *Id*. at 1086-87 (citations omitted).

The factors that a court should consider in determining whether a particular defendant should be released under pretrial supervision or confined pending trial are set forth in 18 U.S.C. § 3142(g), and immigration status is not a listed factor. *See also* 18 U.S.C. § 3142(e)(2)-(3), (f). Alienage may be taken into account, but it is not dispositive. *See Motamedi*, 767 F.2d at 1408 (holding that, under the

4

circumstances of that case, the factor of alienage "does not tip the balance either for or against detention").

Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings. *See* 18 U.S.C. § 3142(a)(3), (d).[1] The Bail Reform Act does, however, provide specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence. 18 U.S.C. § 3142(d). The judicial officer must determine whether such an alien may flee or pose a danger to any other person or the community. 18 U.S.C. § 3142(d)(2). If so, the judicial officer shall order temporary detention for not more than ten days, and direct the attorney for the government to notify "the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d).[2] A determination that the alien may

---

[1] A categorical bar against release for removable aliens would raise constitutional questions. *See, e.g.*, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (en banc) (holding that Arizona constitutional provision categorically forbidding bail for certain undocumented immigrants violates substantive due process). In light of the plain language of the Bail Reform Act, however, we need not reach those questions here.

[2] The Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003). Immigration functions were transferred to the agencies within the newly-created Department of Homeland Security ("DHS") and to the Department of Justice ("DOJ"). *Id.* The notification under 18 U.S.C. § 3142(d) must now,

(continued...)

flee or pose a danger—voluntary acts—is required to impose even this temporary detention. *Id.* If the immigration official does not take custody of the defendant during that ten-day period, Congress directs the court to treat the defendant in accordance with the other provisions of the Bail Reform Act, "notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." 18 U.S.C. § 3142(d). The district court's decision to detain Santos-Flores pending trial based on the possibility of his detention or removal by immigration authorities, therefore, is contrary to the express language of the Bail Reform Act.

Reinstatement of a prior order of removal is neither automatic nor obligatory. *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013). ICE may decide to forego reinstatement for a variety of reasons, including but not limited to the exercise of prosecutorial discretion. *Id.* at 878-79. The government may also exercise its judgment that the public interest in criminally prosecuting an alien is greater than the public interest in swiftly removing him. The government may, therefore, elect to deliver the alien to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately pursuant to

---

[2](...continued)
therefore, be made to the appropriate DHS or DOJ official.

6

8 U.S.C. § 1231(a)(5). Having made this choice, however, the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act.

As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition. *See, e.g.*, *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176-78 (D. Or. 2012) (citing cases). If the government, by placing Santos-Flores in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy. *See id.* at 1179-81.[3] The court may not, however, substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act. 18 U.S.C. § 3142(e), (g); *see also Lopez-Valenzuela*, 770 F.3d at 791.

We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and

---

[3] We need not, therefore, reach the question of whether the removal period of 8 U.S.C. § 1231(a)(1)(A) begins while a defendant is "in custody" on pretrial release, subject to restraints not shared by the public generally that significantly confine and restrain his freedom. *See* 8 U.S.C. § 1231(a)(1)(B); *cf. Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973). Nor need we reach the relevance, if any, of 8 C.F.R. § 215.3(g), which provides that the departure from the United States of an alien who is needed as a party to a criminal case shall be deemed prejudicial to the interests of the United States.

removal from the United States to find that no condition or combination of conditions will reasonably assure Santos-Flores's appearance pursuant to 18 U.S.C. § 3142(e).

Our conclusion is different, however, with regard to the district court's alternative ruling that Santos-Flores is a voluntary flight risk. We conclude that the totality of the evidence supports the district court's ruling and, consequently, its detention order. Primary factors include Santos-Flores's violation of the terms of his supervised release, his multiple unlawful entries into the United States, his prior failure to appear when required in state court, his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him.

Santos-Flores does not dispute this evidence, but argues that such factors are so common to defendants in illegal reentry prosecutions that they amount to a categorical rule, or at least an improper presumption, against release in such cases. Even if we accept, for purposes of decision, the premises of this argument, it fails on its own terms. Review of the individualized factors set forth in 18 U.S.C. § 3142(g) does not bear out Santos-Flores's contention that a denial of pretrial release to him will amount to a presumption that all illegal reentry defendants, much less all undocumented alien defendants, will be denied pretrial release. For

8

instance, on the record before us, the government has shown by a preponderance of the evidence that Santos-Flores's latest entry into the United States violated the terms of his supervised release in the Western District of Texas. The Bail Reform Act provides that the court shall consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B). Consideration of this factor does not apply categorically to all undocumented aliens, all illegal reentry defendants, or even all defendants with a prior illegal reentry conviction. It would apply only to defendants whose reentry occurred in violation of an applicable term of supervised release.

Similarly, Santos-Flores does not dispute that he has a prior charge of failure to appear in Colorado, in addition to a number of other prior arrests. Consideration of a defendant's record concerning appearance at court proceedings and other past conduct is proper under 18 U.S.C. § 3142(g)(3)(A). This factor is individualized to Santos-Flores and does not create a categorical rule that would prevent release for undocumented defendants or defendants in illegal reentry prosecutions. Santos-Flores has made no attempt to explain his prior charge of failure to appear and his other arrests, or to offer any countervailing circumstances.

9

It is true that the government also advances a number of undisputed factors that are relatively common to defendants in illegal reentry cases. These include Santos-Flores's possession of identification documents that do not belong to him; his claim, made to the Border Patrol, to be a United States citizen; and his reentry into the United States in violation of an order of removal. But consideration of the nature and circumstances of the offense charged is proper under 18 U.S.C. § 3142(g)(1). *See Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). When these considerations are supplemented by the factors already discussed that are particular to Santos-Flores and not necessarily applicable to all alien reentry defendants, the totality of the evidence supports the district court's ruling and negates any claim that the district court applied a categorical rule or presumption favoring detention of alien defendants.

We do not accept, however, the government's argument that Santos-Flores's lack of ties to the District of Arizona supports the pretrial detention order, because Santos-Flores has significant community ties in Colorado. Family ties, employment, length of residence in the community, and community ties are all relevant to the determination of pretrial release. 18 U.S.C. § 3142(g)(3)(A). This court has held that "community ties" under the Bail Reform Act "embrace[] both the community in which the charges are brought and also a community in the

10

United States to which the defendant has ties." *Townsend*, 897 F.2d at 995. The record reflects that Santos-Flores has a United States citizen wife and United States citizen children, with whom he seeks to live in Colorado. He resided in the same Colorado community for approximately fifteen years, since childhood. He worked for the same employer for approximately nine years and apparently would be welcomed back. These community ties favor Santos-Flores, but they do not overcome the numerous other factors that supported the district court's determination that he was a voluntary flight risk.

In sum, the district court correctly found that the government in this case met its burden of showing, by a preponderance of the evidence, that individualized factors demonstrate that no condition or combination of conditions will reasonably assure that Santos-Flores will voluntarily appear. *See* 18 U.S.C. § 3142(e); *Motamedi*, 767 F.2d at 1406. We therefore affirm the district court's pretrial detention order.

**AFFIRMED.**

## Counsel Listing

Robert J. McWhirter, ASU Alumni Law Group, Phoenix, Arizona, for Appellant Ernesto Santos-Flores.

John S. Leonardo, United States Attorney, Krissa M. Lanham, Deputy Appellate Chief, and William G. Voit, Assistant United States Attorney, United States Attorney's Office, Phoenix, Arizona, for Appellee United States of America.