**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARIO AILON-AILON,

    Defendant - Appellant.

No. 17-3178

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:17-CR-10104-EFM-1)**
_____

Paige A. Nichols, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, and Jennifer A. Amyx, Assistant Federal Public Defender, with counsel on the briefs), Kansas Federal Public Defender's Office, Topeka, Kansas, for Defendant-Appellant.

Brent I. Anderson, Assistant United States Attorney (Thomas E. Beall, United States Attorney, with counsel on the brief), United States Attorney's Office, District of Kansas, Wichita, Kansas, for Plaintiff-Appellee.
_____

Before **LUCERO**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

**PER CURIAM**.
_____

We expedited consideration of this bail appeal to consider Mario Ailon-

Ailon's argument that the government has misinterpreted the word "flee" as it

appears in 18 U.S.C. § 3142(f)(2), resulting in his illegal pre-trial detention. He argues that involuntary removal by the Bureau of Immigration and Customs Enforcement ("ICE") does not constitute flight of the sort that would justify detention. On initial consideration, a magistrate judge agreed and determined that Ailon-Ailon should not be detained before trial. On review of the magistrate judge, the district court reversed, ordering that he be detained. We conclude that the plain meaning of "flee" refers to a volitional act rather than involuntary removal, and that the structure of the Bail Reform Act supports this plain-text reading. Exercising jurisdiction under 18 U.S.C. § 3145(c), we reverse and remand for further proceedings.

## I

Ailon-Ailon, a citizen of Guatemala, has lived in Dodge City, Kansas, for at least seven years. In July 2017, he was arrested by ICE agents, who determined that he had reentered the United States illegally after he was ordered removed in 2001. Rather than immediately removing him again, ICE referred the matter for criminal prosecution. Ailon-Ailon was charged with one count of illegal reentry in violation of 8 U.S.C. § 1326(a), as enhanced by § 1326(b)(1). He is subject to a reinstated removal order, and ICE has lodged a detainer with the United States Marshals Service, requesting custody of Ailon-Ailon if he is released from the Marshals' custody.

The government moved to detain Ailon-Ailon prior to trial on the ground that, if he was released, he would be removed from the country by ICE before trial. It

2

argued that because he is subject to a reinstated order of removal, ICE would be obligated to remove him within ninety days. He would therefore not be present for trial. A magistrate judge denied the government's motion, concluding that Ailon-Ailon was not a flight risk because "the risk of flight that the [Bail Reform Act] is concerned with is not a flight paid for by the U.S. Government, and if the Government can't decide whether to keep him and prosecute him or deport him, that's on them." The magistrate judge ordered that Ailon-Ailon be released subject to a ten-thousand dollar bond and certain conditions.

On appeal of the magistrate's decision to the district court, the government reasserted its definition of "flee." By written order, the district court reversed, but specifically concluded in doing so that Ailon-Ailon was not a voluntary flight risk, and acknowledged that "[a]s a policy matter, . . . if the United States government, through the Department of Justice, wanted [Ailon-Ailon] present for prosecution, it should not . . . complain [about his] non-appearance due solely to the actions of the United States government, through the Department of Homeland Security." However, the district court found by a preponderance of the evidence that ICE would remove him before trial and that such removal qualified as flight. It ordered that Ailon-Ailon be detained. This appeal followed.

## II

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). The Bail Reform Act sets forth one such exception. Under that Act,

3

individuals charged with a crime are generally "released on personal recognizance or upon execution of an unsecured appearance bond," 18 U.S.C. § 3142(a)(1), or they may be "released on a condition or combination of conditions" that will reasonably ensure their appearance in court and the safety of the community. § 3142(a)(2), (c)(1).

The Act establishes a two-step process for detaining an individual before trial. § 3142(f). First, the government may move for pre-trial detention if the defendant has been charged with certain enumerated offenses or "in a case that involves . . . a serious risk that such person will flee; or . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." Id. If the court determines that there is such a risk, the government must prove at the second step of the process that there "is no condition or combination of conditions" that "will reasonably assure the [defendant's] appearance . . . as required [as well as] the safety of any other person and the community." Id. The district court is directed to consider various factors in making this determination, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

In this case, the government did not allege that Ailon-Ailon represented a danger to the community; it relied solely on the risk that Ailon-Ailon would flee in

4

urging pre-trial detention. The government bears the burden of proving a defendant

is a flight risk by a preponderance of the evidence. United States v. Cisneros, 328

F.3d 610, 616 (10th Cir. 2003). "We apply de novo review to mixed questions of law

and fact concerning the detention or release decision, but we accept the district

court's findings of historical fact which support that decision unless they are clearly

erroneous." Id. at 613.

## III

Ailon-Ailon argues that the word "flee" as it appears in § 3142(f)(2) does not

encompass involuntary removal. He contends the risk that he would be removed

from the United States by ICE does not constitute a risk that he will flee prior to trial.

This is an issue of first impression in this circuit.[1]

District courts considering this argument have reached varying conclusions.

Compare United States v. Ong, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) (denying

pre-trial release on the ground that "there is a great likelihood that [the defendant]

will be deported from the United States [pursuant to an ICE detainer and order of

removal] prior to the conclusion of any criminal proceedings against him"), and

United States v. Pantaleon-Paez, No. 07-292, 2008 WL 313785, at *4 (D. Idaho Feb.

1, 2008) (unpublished) ("In light of [ ]ICE's imminent detention and subsequent

---

[1] The district court relied on United States v. Vasquez, 413 F. App'x 42 (10th
Cir. 2011) (unpublished), an Order and Judgment concerning a detainer and
reinstated order of removal in the context of 18 U.S.C. § 3143, which governs release
pending sentencing or appeal. Although it is understandable that the district court
applied Vasquez, it contains no analysis of involuntary removal as flight. Indeed,
there is only a passing reference to the issue.

5

deportation efforts in the event of Defendant's release, it cannot be said that there is any condition or combination of conditions that will assure his appearance at trial."), with United States v. Barrera-Omana, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) ("The risk of nonappearance referenced in . . . § 3142 has to involve an element of volition."), and United States v. Montoya-Vasquez, No. 4:08-cr-3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009) (unpublished) (stating that § 3142 requires a finding that the defendant "would fail to appear by virtue of his own volition, actions and will"). In a slightly different context, the Ninth Circuit has suggested that "flee" as used in § 3142 involves an element of volition. See United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015) ("As a number of district courts have persuasively explained, the risk of nonappearance referenced in . . . § 3142 must involve an element of volition.").

We agree with the latter set of courts that a risk of involuntary removal does not establish a "serious risk that [the defendant] will flee" upon which pre-trial detention may be based. § 3142(f)(2)(A). Having failed to make the threshold showing required by § 3142(f), the government's detention motion fails at the first step of our analysis.

In interpreting a statute, "we look initially to the plain language of the provision at issue. If the words of the statute have a plain and ordinary meaning, we apply the text as written." Fruitt v. Astrue, 604 F.3d 1217, 1220 (10th Cir. 2010) (quotation, citation, and alteration omitted). The ordinary meaning of "flee" suggests volitional conduct. For example, Black's Law Dictionary (10th ed. 2014) defines

6

"flee" as: "To run away; to hasten off . . . To run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem . . . To vanish; to cease to be visible . . . To abandon or forsake." Webster's Third New International Dictionary (1976) defines "flee" as "to run away from." As Ailon-Ailon noted at oral argument, one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene.

The structure of the Bail Reform Act supports this plain-language interpretation. See Homeland Stores, Inc. v. Resolution Tr. Corp., 17 F.3d 1269, 1273 (10th Cir. 1994) ("In interpreting a statutory provision, context and structure are, as in examining any legal instrument, of substantial import in the interpretive exercise." (quotation omitted)). "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings," but instead set forth "specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence." Santos-Flores, 794 F.3d at 1090-91. The Act provides that a removable alien may be temporarily detained for up to ten days to permit ICE to take custody. § 3142(d)(2).[2] If ICE declines to do so, such "person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion

---

[2] Because Ailon-Ailon was initially arrested by ICE, it does not appear that the notice provision of subsection (d) applies to this case. Nothing in this opinion should be read to suggest that ICE's detainer is somehow invalid or unenforceable because the subsection (d) process was not pursued.

proceedings." Id. This provision demonstrates that a defendant "is not barred from release because he is a deportable alien." United States v. Adomako, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001); see also United States v. Brown, No. 4-15-cr-102, 2017 WL 3310689, at *4 (D.N.D. July 31, 2017) (unpublished) (because "Congress affirmatively extended to alien persons the same protections it affords citizens under the Act, . . . the court would violate the Bail Reform Act if it detained defendant based only on the fact he is an alien and ICE has filed a detainer"); United States v. Stepanyan, No. 3:15-CR-00234-CRB, 2015 WL 4498572, at *2 (N.D. Cal. July 23, 2015) (unpublished) (noting the government's argument that a defendant's "status as a deportable alien itself bars him from release is incompatible with the clear directives of § 3142(d)").

Further, although Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list. See § 3142(e)(3). The Bail Reform Act directs courts to consider a number of factors and make pre-trial detention decisions as to removable aliens "on a case-by-case basis." Barrera-Omana, 638 F. Supp. 2d at 1111 (quotation omitted). Yet under the government's construction, the Act's "carefully crafted detention plan . . . would simply be overruled by an ICE detainer," precluding "any kind of individualized consideration of a person before the Court." Id.

Finally, the Bail Reform Act provides an affirmative defense to prosecution for failure to appear if "uncontrollable circumstances prevented the person from appearing or surrendering, and . . . the person did not contribute to the creation of

8

such circumstances in reckless disregard of the requirement to appear or surrender." § 3146(c). This section implies that the Act is concerned with "the risk that the defendant may flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and will." Montoya-Vasquez, 2009 WL 103596, at *5.

Despite the plain meaning of the word and the structure of the Act, the government argues that interpreting "flee" to include involuntary removal would better effectuate congressional intent. It argues that such an interpretation would reconcile ICE's authority to refer cases for criminal prosecution with its statutory duty to promptly remove individuals who are subject to reinstated removal orders. See 8 U.S.C. § 1231(a)(1)(A) (stating that ICE "shall remove the alien from the United States within a period of 90 days"). But it is not clear to us that ICE must remove Ailon-Ailon before trial. An illegal reentry prosecution may well be completed prior to the ninety-day deadline. The government also argues that pre-trial detention is justified by the inconvenience to ICE that will be involved if it must take Ailon-Ailon into custody under its detainer. While it would be more convenient and efficient for him to be held by the Marshals up to and during his trial, the government's convenience cannot justify a tortured reading of statutory language.

Further, regulations regarding voluntary departure provide that ICE may temporarily prevent an alien from leaving the country "if his departure would be prejudicial to the interests of the United States." 8 C.F.R. § 215.2(a). A departure is deemed prejudicial to United States interests if the alien "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or

9

pending in a court." § 215.3(g). Ailon-Ailon also cites ICE's detainer form, which invites law-enforcement agencies to work with ICE to keep a criminal defendant in the United States for prosecution purposes.

In any event, to the extent any conflict exists, it is a matter for the Executive Branch to resolve internally. "The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. . . . It is not appropriate for an Article III judge to resolve Executive Branch turf battles." Barrera-Omana, 638 F. Supp. 2d at 1111; see also United States v. Tapia, 924 F. Supp. 2d 1093, 1098 (D.S.D. 2013) ("[O]ne arm of the Executive, wishing to prosecute this defendant criminally, is arguing that he is likely to flee based on the possible actions of a different arm of the same Executive."); United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1170 (D. Or. 2012) ("If the Executive Branch chooses not to release the Defendant and instead decides to abandon criminal prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that.").

In light of the plain meaning of "flee," the structure of the Bail Reform Act, and the importance of the liberty interests at stake in this case, we decline to resolve the alleged conflict within the Executive Branch. We hold that, in the context of § 3142(f)(2), the risk that a defendant will "flee" does not include the risk that ICE will involuntarily remove the defendant.

**IV**

10

The order of the district court denying Ailon-Ailon pre-trial release is **REVERSED**. We **REMAND** with instructions to set appropriate conditions for Ailon-Ailon's release pending trial. When the conditions of release have been met, the United States Marshals shall release Ailon-Ailon to ICE custody, pursuant to the detainer. We **GRANT** Ailon-Ailon's motion to file a reply brief.