**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTIAN SANCHEZ-RIVAS,

    Defendant - Appellant.

No. 18-2138
(D.C. No. 2:18-MJ-2325-RCB-SMV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

Defendant Christian Sanchez-Rivas appeals the district court's order of

detention pending trial. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3145(c), and we affirm.

I.

On July 17, 2018, Sanchez-Rivas was apprehended by United States Border

Patrol agents outside a store in Sunland Park, New Mexico. The agents discovered

Sanchez-Rivas and his two companions by following a trail of footprints from the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

nearby Mexico border to the store, where they found the trio hiding in and around a dumpster.

Sanchez-Rivas admitted to the agents that he was a native and citizen of Mexico, who was present in the United States without authorization. The agents further learned that Sanchez-Rivas had been deported a month earlier, on June 18, 2018, and he had not received permission to reapply for admission to the United States. He was charged by criminal complaint with reentry after deportation in violation of 8 U.S.C. §§ 1326(a)(1) and (2).

The magistrate judge ordered Sanchez-Rivas detained pending trial because (1) the evidence against him was strong, (2) he lacked ties to the district of New Mexico where the charges were pending, (3) he did not have legal status in the United States, and (4) he was subject to removal or deportation upon completion of his sentence. Sanchez-Rivas filed a motion for reconsideration. Following a hearing, the magistrate judge reaffirmed the detention order.

Sanchez-Rivas appealed to the district court. The evidence and arguments at the hearing established that Sanchez-Rivas first came to the attention of immigration officials in March 2018, when was arrested and briefly detained for public intoxication. Although the charge was dismissed, he was taken into immigration custody and placed in removal proceedings.

At a March 29, 2018 hearing, the immigration judge (IJ) granted Sanchez-Rivas's request to continue the hearing so counsel could determine whether there were any grounds on which to seek relief from removal. In granting the

continuance, the IJ directed counsel to "file all applications for relief on or before ten (10:00) o'clock on the 3rd of May, 2018 . . . or I'll deem they have been abandoned." Aplee. Supp. App. at 27.

On May 3, 2018, Sanchez-Rivas and his counsel appeared for the immigration hearing. Counsel made an oral motion to withdraw in favor of a different lawyer who was allegedly on her way to the hearing from out of town. The IJ denied the motion because he had "not received any motion to withdraw from [existing counsel] or I've not received any motion to substitute . . . for other counsel." *Id*. at 24. When counsel admitted that he would "not be filing any relief," *id*. at 25, the IJ found any grounds for relief had been abandoned and ordered Sanchez-Rivas removed to Mexico. The IJ informed Sanchez-Rivas that the deadline for an appeal was June 4, 2018. No appeal was filed, and Sanchez-Rivas was deported to Mexico.

In support of pretrial release, Sanchez-Rivas relied primarily on his good character and strong ties to the United States, as well as an alleged defense to the illegal reentry charge under § 1326(d). In particular, Sanchez-Rivas, who is 26 years old, explained that he was brought to the United States by his parents when he was an infant. He had never been back to Mexico until June 2018, when he was deported. Although he has a sister who lives in Mexico, he knows her only through photographs. The family has lived in the same mobile home park in North Carolina for 22 years, in a mobile home currently owned by Sanchez-Rivas.

Sanchez-Rivas also noted that he obtained his General Educational Development Diploma in 2013, applied for and received status pursuant to the

3

Deferred Action for Childhood Arrivals program (DACA), and secured a work permit in September 2014. Most recently, Sanchez-Rivas, who plans to marry a United States citizen, worked as a certified income tax preparer. He also noted that pretrial services, although it recommended that he be detained, determined that Sanchez-Rivas had a cousin who would be a suitable third-party custodian if released.

With regard to the illegal reentry charge, Sanchez-Rivas argued that he "may be able to challenge his prior removal based on procedural and substantive grounds. A [§]1326(d) motion may be in his future. However, we are still waiting on his immigration records." Aplt. App. at 96. Specifically, Sanchez-Rivas argued that his DACA status was grounds for relief from removal, and he was denied procedural due process when the IJ proceeded at the May 2018 hearing without waiting to hear argument from the lawyer who planned to enter her appearance when she arrived.

The district court found that Sanchez-Rivas should be detained because he was a flight risk and no condition or combination of conditions could assure his appearance.

## II.

Under the Bail Reform Act, the government may move for pre-trial detention "in a case that involves . . . a serious risk that such person will flee." § 3142(f)(2)(A). If the court determines there is such a risk, the government must then prove that there is no "condition or combination of conditions" that "will reasonably assure the [defendant's] appearance . . . as required [as well as] the safety

4

of any other person and the community." *Id*. § 3142(f). In making this determination, the district court is directed to consider various factors, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

The government did not contend that Sanchez-Rivas represented a danger to the community; instead, it relied solely on the risk of flight. The government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). "We apply de novo review to mixed questions of law and fact concerning the detention or release decision, but we accept the district court's findings of historical fact which support that decision unless they are clearly erroneous." *Id*. at 613. "A [factual] finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gilgert*, 314 F.3d 506, 515 (10th Cir. 2002) (brackets and internal quotation marks omitted). "On clear error review, our role is not to re-weigh the evidence; rather, our review . . . is significantly deferential." *Id*. at 515-16 (internal quotation marks omitted).

III.

According to Sanchez-Rivas, the district court gave no weight to the evidence that favored pretrial release. Specifically, he argues that (1) his strong ties to the

5

United States and desire to be with his family and fiancé make him less likely to flee, and (2) he has a viable defense to the illegal reentry charge under § 1326(d). As an overarching premise, Sanchez-Rivas contends that the court failed to make an individualized determination that he was a flight risk; rather, it based its decision on the presumption that *every* defendant who is a deportable alien, regardless of the facts and circumstances, should be detained. These arguments lack merit.

We agree that Sanchez-Rivas cannot be detained solely because he is a removable alien. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("[A]lthough Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list."). Indeed, the district court acknowledged that Sanchez-Rivas could not be detained solely because he was deportable. *See* Aplt. App. at 109. We agree, however, with the government that the court did not apply a categorical presumption; instead, it made an individualized determination that Sanchez-Rivas was a flight risk.

First, the district court considered Sanchez-Rivas's history and characteristics: "I'm certainly sympathetic to Mr. Sanchez'[s] history and characteristics. And I give some credence in my decision to the fact that there have been some encounters with law enforcement and—but not much." *Id*. at 109.

Second, the district court considered the weight of the evidence against Sanchez-Rivas:

> Basically, what will make my determination is—is the strength of the evidence. And you would ask me to discount the weight of the evidence or to weigh it less heavily because there may be a defense to the

prior removal order. That can be handled through motions practice. . . . [B]ut at this point, I'm not making a determination about guilt or innocence, I'm making a determination on the strength of the evidence. And I've read the Criminal Complaint, I've heard what the Government had to say about the facts of his apprehension, and—so the strength of the evidence will play significantly in my decision.

*Id*. at 109-10.

According to Sanchez-Rivas, however, the district court ignored his defense to the illegal reentry charge in considering the strength of the evidence. Although the court did not specifically mention § 1326(d), it was clearly aware of the argument because it noted that Sanchez-Rivas could raise the defense in a motion. More to the point, to establish a defense under § 1326(d), Sanchez-Rivas must demonstrate that he has "exhausted any administrative remedies that may have been available," "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review," and "the entry of the order was fundamentally unfair." *Id*.

At the time of the district-court hearing, the immigration records were not available. But since the hearing, the government has produced the transcript of the May 3, 2018 proceedings, which establishes that Sanchez-Rivas was notified of his right to appeal. His failure to exhaust his administrative remedies, i.e., appeal, alone makes a successful defense under § 1362(d) unlikely.

Last, the district court evaluated the nature and circumstances of the offense:

[Y]ou may be absolutely right, he may, if he were released, choose to return and face the consequences, but when he knows that if he isn't successful in his defense of this case that he's going to Mexico, a place where he has recently been and the thought of staying there is abhorrent to him, I'm afraid that he does have significant incentive to flee elsewhere within the United States. And you say, 'Well, why would he

7

do that? He's got—he'd have to live, you know, in fear. He wouldn't be able to be with his family.' Well, those same things apply if he ends up in Mexico.

*Id*. at 110.

For his final argument, Sanchez-Rivas contends that the district court failed to discuss whether any conditions of release could be fashioned to satisfy its concerns about flight. As authority, he relies on *United States v. Mobley*, 720 F. App'x 441 (10th Cir. 2017). But *Mobley* is easily distinguished. In *Mobley*, this court remanded for additional findings of fact and an explanation of the reasoning behind the district court's pretrial detention order because the court's analysis of the § 3142(g) factors was so lacking as to preclude meaningful appellate review.

We acknowledge that Sanchez-Rivas suggested conditions of release that included electronic monitoring and/or a secured bond. The government, on the other hand, argued that no conditions short of detention were adequate. Ultimately, the district court agreed with the government:

> The Court, having heard the parties' arguments and having reviewed the criminal complaint, pre-trial services report, Defendant's Brief and attached Exhibits, and the United States' response, and being otherwise fully advised . . . [f]or the reasons stated on the record, the Court hereby **FINDS** by a preponderance of the evidence that the Defendant is a flight risk[,] [and] **FINDS** that there are no conditions or combination of conditions which will reasonably assure the appearance of the Defendant as required.

Aplt. App. at 90.

Under the highly deferential standard of review we must afford the court's factual findings, our review of the entire record does not leave us "with the definite

8

and firm conviction that a mistake has been committed." *Gilgert*, 314 F.3d at 515 (internal quotation marks omitted).

We affirm the court's order detaining Sanchez-Rivas pending trial. We grant Sanchez-Rivas's motion to file a reply brief.

Entered for the Court
Per Curiam

9