# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2025

Lyle W. Cayce
Clerk

No. 25-20198

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CELIA IGNACIA ESQUIVEL-BATAZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:25-CR-206-1

Before DENNIS, GRAVES, and DUNCAN, *Circuit Judges*.
STUART KYLE DUNCAN, *Circuit Judge*:

Celia Ignacia Esquivel-Bataz appeals the district court's denial of her motion for pretrial release. She contends the court legally erred by considering an immigration detainer when it determined that she posed a flight risk. For the following reasons, we AFFIRM.

Esquivel-Bataz, a citizen and national of Mexico, was convicted in 2011 of making a false statement to obtain credit. She was subsequently deported in May 2012. In April 2025, United States Immigration and Customs Enforcement (ICE) agents encountered Esquivel-Bataz at an illegal

No. 25-20198

gambling parlor in Houston. A grand jury charged Esquivel-Bataz with being an alien unlawfully present in the United States after previously being deported following a felony conviction in violation of 8 U.S.C. § 1326(a) and (b). ICE lodged an immigration detainer against her.

After conducting a detention hearing, a magistrate judge determined Esquivel-Bataz was not a flight risk and should be released on bond pending trial. The Government filed an emergency motion to stay and revoke the order of release, which the district court granted. Esquivel-Bataz filed a motion for pretrial release in the district court, seeking to uphold the magistrate judge's conditions for release. The district court held an evidentiary hearing on the issue.

At the evidentiary hearing, an ICE officer testified that, if Esquivel-Bataz were released, ICE would immediately take her into custody and remove her to Mexico within 24 hours because of the detainer. After the hearing, the district court denied Esquivel-Bataz's motion for pretrial release, finding her to be a flight risk. In making its decision, the court noted the following: (1) Esquivel-Bataz was indicted for illegal reentry; (2) she is a citizen and national of Mexico; (3) she was deported in 2012 following a felony conviction; (4) she was found in the United States unlawfully in 2025; and (5) she has an immigration detainer against her.

Esquivel-Bataz timely appealed. We have jurisdiction under 18 U.S.C. § 3145, which treats a pretrial detention order as an appealable final order under 28 U.S.C. § 1291. *See* 18 U.S.C. § 3145(c).

When reviewing a district court's determination that pretrial detention is necessary, "our scope of review is limited." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985). Absent legal error, the order must be sustained "'if it is supported by the proceedings below,' a deferential standard of review that we equate to the abuse-of-discretion standard."

*United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)); *see also United States v. Westbrook*, 780 F.2d 1185, 1189 (5th Cir. 1986); *United States v. Stanford*, 341 F. App'x 979, 980 (5th Cir. 2009).

Esquivel-Bataz argues that *de novo* review applies because, in her view, the district court legally erred by relying on the detainer to deny her bail. *See United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006) ("Generally, such [bail] denial is reviewed for an abuse of discretion; but, when, as here, it involves an error of law that entails statutory interpretation, review is *de novo*." (citation omitted)). We disagree.

When a district court rules on a pretrial-release motion, the Bail Reform Act (BRA) mandates it evaluate the (1) nature and circumstances of the offense, (2) weight of the evidence, (3) history and characteristics of the defendant, and (4) any danger that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Moreno*, 857 F.3d 723, 726 (5th Cir. 2017). The court must deny pretrial release if it finds, based on that evaluation, that "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1).

Contrary to Esquivel-Bataz's claim, the Government does not contend that Esquivel-Bataz's possible deportation itself would be considered flight under § 3142. *See* 18 U.S.C. § 3142(f)(2); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." (second alteration in original) (quoting 18 U.S.C. § 3142(f)(2)(A))); *United States v. Soriano-Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019) ("[T]he presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny BRA pretrial

release."). Instead, the Government argues only that the district court properly undertook an individualized evaluation of Esquivel-Bataz under the BRA factors and found her to be a flight risk. *See, e.g.*, *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[A]n immigration detainer cannot support the categorical denial of bail . . . . Rather, the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [the BRA]."). We agree.

The district court weighed several factors in finding that no conditions could reasonably assure Esquivel-Bataz's appearance. For instance, the court cited her Mexican alienage and criminal history, including her initial illegal entry, her felony fraud conviction, and her subsequent illegal reentry. We see no abuse of discretion in the court's relying on those factors to deny pretrial release. *See, e.g.*, *Rueben*, 974 F.2d at 586–87; *see also United States v. Wanjiku*, No. 23-6180, 2024 WL 1573063, at *2 (10th Cir. Apr. 10, 2024) (affirming a pretrial detention order because it was "supported by more than just the fact of an immigration detainer"); *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015) (finding the district court erred in relying on detainer to find flight risk but affirming based on other factors supporting flight risk).

To be sure, the district court did mention Esquivel-Bataz's detainer during the hearing. But the court did not find that Esquivel-Bataz's deportation would itself be flight from the criminal proceedings, nor that the presence of the detainer alone justified pretrial detention under § 3142. In fact, as the record reflects, the court did not consider the detainer as a factor supporting flight risk, but only to understand its likely effect should Esquivel-Bataz be released. As the court explained, "I didn't bring [the detainer] up as risk of flight. I brought it up because you said that they hadn't spoken with the agent. . . . I wasn't suggesting that that established risk of flight." Esquivel-Bataz fails to show how this represents an abuse of discretion,

No. 25-20198

particularly given the deference we must give to the district court's findings on pretrial detention. *See Rueben*, 974 F.2d at 586; *see also, e.g.*, *United States v. Odeyale*, No. 24-4042, 2024 WL 2747542, at *4 (10th Cir. May 29, 2024) ("To be sure, the district court did take into account the likelihood of Odeyale being deported . . . . But there is no prohibition on that.").

Accordingly, we conclude that the district court did not abuse its discretion in denying Esquivel-Bataz pretrial release.

AFFIRMED.

No. 25-20198

Ｊａｍｅｓ Ｌ. Ｄｅｎｎｉｓ, *Circuit Judge*, dissenting:

The Bail Reform Act presumes pretrial release—reflecting the defendant's presumption of innocence—and the Government bears the burden of proving flight risk by a preponderance of the evidence. 18 U.S.C. § 3142. In the present case, the district court repeatedly and explicitly relied on an ICE detainer in ordering pretrial detention, reasoning that Esquivel-Bataz would be immediately removed to Mexico if released and, thus, posed a flight risk. That reliance was legally erroneous: the Bail Reform Act does not permit detention based on the possibility of involuntary removal by immigration authorities. *See, e.g.*, *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017); *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).

Although some courts have affirmed detention orders despite a district court's reference to an ICE detainer, those cases involved situations where the court expressly cabined off the detainer and grounded its ruling in independent 18 U.S.C. § 3142(g) findings. *See, e.g.*, *United States v. Santos-Flores*, 794 F.3d 1088, 1092–93 (9th Cir. 2015). Affirmance may be justified there because the court separated the detainer from its reasoning and grounded its decision on independent statutory factors. But the opposite is true here. The detainer dominated the proceedings. The district court repeatedly returned to it, never offered an *alternative* statutory analysis, and ultimately incorporated the detainer into its written order. In short, we cannot neatly separate the impermissible factor from the outcome.

Because the court applied the wrong legal standard, the appropriate disposition is to vacate and remand for reconsideration. And the record arguably compels release because the detainer itself ensures that Esquivel-Bataz poses zero risk of voluntary flight.

I respectfully dissent.

6

No. 25-20198

I

Celia Ignacia Esquivel-Bataz, a citizen of Mexico, was in the United States without proper documentation. ROA.128–29. She worked as a housekeeper, ROA.148, is a mother to four adult children, and is a grandmother to a minor child, ROA.108–09. Her children, grandchild, and mother all live in Houston, as does she. *Id.*

She has one prior non-violent conviction from 2011, stemming from two separate incidents in 2007 and 2008 where she used false information to obtain financing for vehicle purchases. ROA.129–30. She served her sentence, and ICE deported her in 2012. ROA.128–29. She later reentered the United States.

On April 2, 2025, during a targeted ICE enforcement operation aimed at "illegal gambling parlors," federal agents encountered and interviewed Esquivel-Bataz. ICE lodged a detainer[1] and referred the case to the Department of Justice. The Government charged Esquivel-Bataz with being found undocumented in the United States after a prior removal order in violation of 8 U.S.C. § 1326. ROA.9–11. Esquivel-Bataz appeared at a detention hearing before a magistrate judge. The judge ordered Esquivel-Bataz's pretrial release, concluding: "Other than the fact that she has an ICE detainer lodged against her, I do not find her to be a flight risk." ROA.111.

The Government filed an emergency motion to stay and revoke the order of release, stating: "Perhaps most importantly, [Esquivel-Bataz]'s

---

[1] According to ICE's website, "[a]n immigration detainer is a request from ICE that asks a federal, state or local law enforcement agency – including jails, prisons or other confinement facilities . . . to . . . [n]otify the requesting agency as early as possible before they release a removable alien[;] [and] [h]old the alien for up to 48 hours beyond the time they would ordinarily release them so DHS has time to assume custody in accordance with federal immigration law." *See* https://perma.cc/EW89-VRK6.

release in the present matter will almost certainly mean a transfer to ICE custody and another removal from the United States." ROA.20.

On May 1, 2025, the district court held an evidentiary hearing where the ICE detainer issue loomed large. *See* ROA.121–82. The Government called ICE Agent Justin Vedder as a witness. He extensively and repeatedly testified that, if the district court released Esquivel-Bataz on bond, she would immediately be taken into ICE custody and removed to Mexico. ROA.142–43, 145–46. The district court, in turn, expressed concern about this possibility in an extended colloquy with the Assistant U.S. Attorney.

> **THE COURT:** "Is the problem that you have is that you won't be able to finish out the [criminal prosecution under 8 U.S.C. §] 1326, and they'll be able to escape that punishment and be removed, or is it something else?"
>
> **AUSA:** "Your Honor, the concern, yes, is that there's no greater risk of non-appearance than somebody who's outside of the country and has no permission to lawfully reenter to make those."
>
> **THE COURT:** "[Say] I sustain [Magistrate] Judge Palermo's order. She gets released, picked up by ICE immediately. Do you care, or is it important to you that you keep her here for the [charged offense]?"
>
> **AUSA:** "That's precisely correct, Your Honor."
>
> **THE COURT:** "Okay, I was just making sure. I mean, nobody's ever really, I guess, come out and said it. It's just a question of not when she is going to be removed. It's a question of whether or not she'll do time in an American prison before she is removed."
>
> **AUSA:** "Yes, Your Honor, our interest is seeking that the criminal prosecutions are carried out."
>
> **THE COURT:** "Got it, okay. Just making sure."

ROA.145–46.

Immediately following this exchange, the Government emphasized the point, eliciting testimony from the ICE Agent that Esquivel-Bataz would be removed to Mexico within twenty-four hours if the court granted pretrial release. ROA.146. On cross-examination, the district court's focus on the ICE detainer resurfaced. ROA.160–61 ("Once a detainer's there, no matter how much the US Attorney begs you to not pick them up, you're going to pick them up?").

After the presentation of evidence, the court permitted argument. The district court's first question out the gate addressed the ICE detainer: "What if [releasing Esquivel-Bataz] means she's going to be immediately picked up and removed?" ROA.169. Then, clearly moved by the ICE Agent's testimony, the court reiterated his concern about the detainer:

> "Well, what about the idea that she wouldn't necessarily be running from her day in court? She'd be running from ICE. She got released and she ran because she didn't want to get deported. Because there's a detainer on them, just heard what [ICE Agent] said."

ROA.172. The court then confirmed (again) with the ICE agent—who, although no longer on the stand, remained in the courtroom—that if Esquivel-Bataz were released pretrial, the detainer meant ICE would immediately take her into custody and remove her to Mexico, *i.e.*, there was no risk of Esquivel-Bataz voluntarily fleeing. ROA.172–73.

The court pressed the issue once more, asking the witness, "If this person is released, is [ICE] going to pick her up for removal?" The ICE Agent responded, "Yes, sir." ROA.176. Only moments later, the court again remarked: "I'm talking about what would happen to this specific Defendant if they were released on bond, and what I'm hearing is they 100 percent would be picked up by [ICE] and removed." ROA.178. Defense counsel

responded, "that is still not risk of flight." ROA.179. The court replied, "I didn't bring it up as a risk of flight." *Id.*

That claim, however, is clearly untenable. The district court repeatedly invoked the possibility of ICE removal during a hearing ostensibly devoted to assessing the Defendant's risk of flight. Yet when pressed at the tail end of the hearing, the court disavowed any connection, claiming the point was raised for another purpose. The majority opinion accepts that explanation, *Ante*, at 4–5, but this cannot be squared with the record. The entire transcript, together with the court's written order, makes clear that the ICE detainer was considered in evaluating the Esquivel-Bataz's likelihood of appearing. Indeed, the district court's written order leaves no doubt:

> The Court finds that the credible testimony and information submitted establishes by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant at future proceedings. Defendant has been indicted for an offense in violation of Title 8 U.S.C. § 1326. Defendant is a citizen and national of Mexico with no legal status to reside in the United States. Defendant was deported in 2012 following a state conviction for making a false statement. Subsequently, Defendant was found in the United States on April 2, 2025, as part of a targeted immigration enforcement action. **Defendant has an immigration detainer against her. Defendant poses a flight risk.**

ROA.61–62 (emphasis added). It is difficult to fathom how the majority opinion could conclude that "the court did not consider the detainer as a factor supporting flight risk." *Ante*, at 5. The record could not be clearer.

## II

"Unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its

meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). And thus, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Consistent with these principles, the Bail Reform Act generally directs that a person accused of a federal crime shall be released, either on personal recognizance or unsecured appearance bond, or on conditions. 18 U.S.C. § 3142(a)–(c). As an exception, the Act provides that the Government may seek pretrial detention in a case that involves "a serious risk that [the defendant] will flee." *Id.* § 3142(f)(2)(A). The district court must order pretrial release, however, unless the Government proves by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the [defendant's] appearance." *Id.* § 3142(f). Courts examine four factors in making that determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* § 3142(g).

Here, the district court's detention order made no reference to § 3142(g) or its factors. *See* ROA.61–62. And to the extent the district court did state reasons, Esquivel-Bataz's immigration detainer played an outsized role in the court's flight risk analysis. As explained above, the district court explicitly cited the detainer in its order of detention and repeatedly inquired about the potential for involuntary removal by ICE during the evidentiary hearing.

That is legal error. Our sister circuits that have addressed the issue uniformly hold that the potential for involuntary removal pursuant to an

immigration detainer is not relevant to the flight risk analysis under the Act.[2] *See, e.g.*, *Ailon-Ailon*, 875 F.3d at 1339 ("[T]he risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant."); *Diaz-Hernandez*, 943 F.3d at 1199 (clarifying "that the 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody").[3] And no court of appeals has concluded the opposite.[4]

Having chosen to pursue criminal prosecution, the Government may not rely on its discretionary power of removal to circumvent Esquivel-Bataz's right to an individualized determination under the Bail Reform Act. *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). The potential for

---

[2] The majority opinion omits the full sentence when quoting *United States v. Odeyale*, No. 24-4042, 2024 WL 2747542, at *4 (10th Cir. May 29, 2024), for the proposition that district courts have carte blanche to "take into account the likelihood" of deportation in assessing a defendant's flight risk. *Ante*, at 5. The unpublished opinion actually says that courts can "take into account the likelihood of . . . being deported **in assessing a defendant's ties to the United States**." 2024 WL 2747542, at *4 (emphasis added). The district court here did not purport to consider the detainer for that limited purpose.

[3] The Third Circuit also has held that "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny [Bail Reform Act] pretrial release." *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019) (citing *Ailon-Ailon* when considering whether a district court's pretrial release order also required release from immigration custody). Additionally, the Seventh Circuit has agreed that to "flee" within the meaning of the Act "connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction." *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) (citing *Ailon-Ailon* when considering whether the existence of a suicide risk is sufficient to justify pretrial detention).

[4] The Government attempts to dispute this point by citing to *United States v. Casado-Hernandez*, No. 21-2091, 2021 WL 4344053, at *4 (10th Cir. 2021). The majority opinion does not rely on this case, and for good reason. *Casado-Hernandez* permitted consideration of immigration status to the extent there is a "risk an alien will *voluntarily* flee to their country of origin to evade a prosecution." *Id.* (emphasis added).

involuntary removal pursuant to an immigration detainer is simply not relevant to the flight risk analysis set forth in the Bail Reform Act, and the district court erred by considering this factor.[5]

The majority opinion points to two cases for the broad proposition that we may affirm an order of detention despite the district court's improper reliance on the ICE detainer so long as the district court relied on other permissible factors: (1) *United States v. Wanjiku*, No. 23-6180, 2024 WL 1573063, at \*2 (10th Cir. Apr. 10, 2024); and (2) *Santos-Flores*, 794 F.3d at 1092. *Ante*, at 4. Both are inapposite, and neither are that sweeping.

*First*, *Wanjiku* arose in a different posture: the denial of release pending sentencing following a jury conviction. 2024 WL 1573063, at \*1. Post-conviction, the Bail Reform Act mandates a presumption of detention, and the burden to overcome it rests with the defendant by clear and convincing evidence. 18 U.S.C. § 3143(a)(1). That alone distinguishes *Wanjiku* from the present pretrial context, where the Bail Reform Act mandates a presumption of release and the burden lies with the Government by a preponderance of the evidence. *Id.* § 3143; *see United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) (explaining that, for purposes of pretrial detention, unlike findings regarding the safety of others or the community, a judicial officer may order detention for risk of nonappearance if that risk is established by a preponderance of the evidence).

Moreover, the district court's improper reliance on the ICE detainer in *Wanjiku* did not dominate the analysis. Instead, tracking § 3142(g), the court relied on the strength of the evidence—including video footage and a

_____

[5] Indeed, courts across our Nation have held that detaining someone solely on account of an ICE detainer violates the Fourth Amendment. Lindsay Nash, *Deportation Arrest Warrants*, 73 Stan. L. Rev. 433, 438 & n.11 (2021) (collecting authorities).

jury conviction—and the defendant's history of violence. *Wanjiku*, 2024 WL 1573063, at *2. Here, by contrast, the district court never mentioned § 3142(g) or made findings regarding the weight of the evidence or any history of violence (Esquivel-Bataz has none). ROA.61–62.

*Second*, although *Santos-Flores* is at least a closer analog because it dealt with pretrial detention, it is still distinguishable in a critical way. There, the district court did exactly what ours did not: it provided a genuine, in-the-alternative, individualized analysis of the statutory factors that justified detention apart from the ICE detainer. 794 F.3d at 1089 (affirming based on the court's "alternative, individual analysis"). Specifically, the Ninth Circuit acknowledged that reliance on the likelihood of removal by ICE was impermissible, but it nevertheless affirmed because the district court had also found, based on the record, that the defendant posed a voluntary flight risk regardless of the prospect of removal. *Id.* at 1092.

Here, by contrast, no such alternative reasoning exists. The district court's written order effectively threw the detainer together with a jumble of considerations—Esquivel-Bataz's alienage, her old nonviolent conviction, and the bare fact of illegal entry and the allegation of reentry—but it never analyzed those factors under § 3142(g), nor did it explain how they independently demonstrated a risk of nonappearance. ROA.61–62. And the hearing transcript makes plain that the ICE detainer dominated the court's thinking; it was not cordoned off from the other factors but infused into them. Thus, unlike in *Santos-Flores*, there is no parallel track of proper reasoning we can fall back on. On this record, we cannot say whether the district court would have exercised its discretion to detain Esquivel-Bataz had it applied the § 3142(g) factors with a correct understanding of the law.

For these reasons, I would vacate and remand for the district court to reconsider its decision. Yet the record arguably compels release. The district

No. 25-20198

court itself acknowledged, if Esquivel-Bataz were "released on bond, . . . [she] 100 percent would be picked up by [ICE] and removed." ROA.178. In other words, the ICE detainer eliminates any possibility of *voluntary* flight. *See Casado-Hernandez*, 2021 WL 4344053, at \*4 (explaining that immigration status may be considered only insofar as it bears on the risk of voluntary flight).

I respectfully but emphatically dissent.