**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 5, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERIKA ESMERALDA GARCIA,

Defendant - Appellant.

No. 25-1370
(D.C. No. 1:25-CR-00163-DDD-11)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

A grand jury in the District of Colorado indicted Erika Esmeralda Garcia on

three charges:  conspiracy to possess with intent to distribute fentanyl, heroin, and

cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession with intent to

distribute fentanyl and aiding and abetting the distribution of fentanyl, in violation of

§ 841(a)(1) and 18 U.S.C. § 2; and conspiracy to commit money laundering, in

violation of 18 U.S.C. § 1956(h).  Ms. Garcia appeals the district court's pretrial

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

detention order.  Exercising jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C.
§ 1291, we reverse.

## I.  LAW GOVERNING PRETRIAL DETENTION

The Bail Reform Act allows pretrial detention only if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  The detention decision must account for four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

If the court finds there is probable cause to believe that the defendant committed certain enumerated offenses, including, as here, an offense under the Controlled Substances Act that carries a maximum sentence of ten years or more, there is a presumption that no conditions will reasonably assure her appearance and community safety.  *See id.* § 3142(e)(3)(A).  The defendant may rebut that presumption by producing "some evidence" that she is not a flight risk and that she does not pose a danger to the community.  *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).  Even if the defendant rebuts it, the presumption remains a factor in the court's detention decision.  *Id.* at 1355.  The government must prove flight risk by a preponderance of the evidence, and it "must prove dangerousness to

2

any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

## II.    BACKGROUND

After the grand jury indicted Ms. Garcia, the probation office filed a pretrial services report, which recommended her pretrial release with conditions. The government argued for pretrial detention. After a hearing, a magistrate judge ordered that Ms. Garcia be detained pending trial. She appealed, and, after reviewing the matter de novo, the district court upheld the magistrate judge's detention order.

The district court determined Ms. Garcia's controlled-substance charges triggered the presumption that release conditions could not reasonably assure her appearance or community safety. It then found that each of the four § 3142(g) factors weighed in favor of detention. Ultimately, the district court said that, given those factors, no condition or combination of conditions could reasonably assure Ms. Garcia's appearance at trial. It therefore concluded the government had proved by a preponderance of the evidence that she poses a flight risk necessitating pretrial detention. Ms. Garcia timely appealed.

## III.    DISCUSSION

"[W]e accept the district court's findings of historical fact . . . unless they are clearly erroneous." *Cisneros*, 328 F.3d at 613. We review de novo the district court's application of the law to the facts, including the ultimate detention decision. *See id.*

3

## A. Nature and Circumstances of the Charged Offenses

In determining the nature and circumstances of the charged offenses weighed "strongly in favor of detention," the district court said "[t]hese charges involve controlled substances that contain fentanyl and, more importantly, a significant amount (8,128 pills)." Aplt. App. vol. I at 89. The court recognized that the charges "have the potential for a mandatory sentence." *Id.* And the possibility of "a very long sentence," the court explained, "could encourage flight from justice." *Id.* We agree that this factor favors detention.

## B. Weight of the Evidence

The district court concluded "the weight of the evidence against [Ms. Garcia] is heavy." *Id.* Although she "disputes the significance of her role in the charged crimes," the court said, "significant evidence supports a finding she engaged in activities to support the drug trafficking efforts of her codefendants and laundered the proceeds." *Id.* In evaluating this factor, the court highlighted a wiretapped phone call and found that "wiretaps on [Ms. Garcia]'s phone . . . indicate she alerted codefendants that a large cache of drugs and weapons were confiscated at her home." *Id.* Ms. Garcia argues that this finding was clearly erroneous. We agree.

At the detention hearing before the magistrate judge, the government proffered that after her apartment was searched, Ms. Garcia called a codefendant to tell him "that someone had broken into the apartment." *Id.* at 19. When the codefendant "asked if the things had been taken," Ms. Garcia "responded that she didn't know and

4

needed him to come over." *Id.* The record does not support the finding that Ms. Garcia told her codefendants that the drugs and weapons were taken.

Once we set aside the clearly erroneous finding, the remaining evidence against Ms. Garcia does not weigh in favor of detention. That is not to say there is no evidence against her. As the government highlights, Ms. Garcia expressed no doubt about what "things" her codefendant referred to in their phone call, permitting an inference that she may have known about the drugs and weapons in her home. The government also points to evidence that Ms. Garcia transferred money to a codefendant (her boyfriend). But although the government has identified *some* evidence against Ms. Garcia, it is not so strong that it will likely motivate her to flee. We therefore conclude that the weight of the evidence favors release.

## C. History and Characteristics

The district court said Ms. Garcia's history and characteristics presented a "close call" but ultimately weighed in favor of detention. *Id.* at 90. The court found Ms. Garcia's "significant ties to the United States, including three daughters and siblings who live in Colorado, as well as her father in Ohio and mother in Texas" weighed "in her favor." *Id.* But it found "having two sisters who reside in Mexico," and "a father who travels there and back often," favored detention. It also found Ms. Garcia's own travel to Mexico within the last year weighed in favor of detention. The district court then said, "These facts support the government's position that absconding to Mexico is a serious risk in [Ms. Garcia]'s case, especially where loss of residency status and deportation are the likely result of a conviction." *Id.*

5

Ms. Garcia argues the district court was wrong to rely on evidence of her father's frequent travel to Mexico. She asserts that because her father lives in a different state, his travels offer "no insight as to her own ties to either the Mexican or American community" or "her own travel patterns." Aplt. Mem. Br. at 14. We disagree. Her father's frequent travel to Mexico suggests that her family has ties to that country. That remains true even though she and her father live in different states.

Ms. Garcia also argues the district court erred in finding the possibility that she could lose her immigration status and be removed from the country supported its flight-risk determination. In support, she cites *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). But in that case, we held only that the word "flee," as used in 18 U.S.C. § 3142(f)(2)(A), does not include involuntary removal. *See Ailon-Ailon*, 875 F.3d at 1337.[1] Here, the district court did not find that Ms. Garcia's risk of involuntary removal created a flight risk. Instead, the district court considered the possibility that Ms. Garcia might voluntarily leave the country before trial to avoid, among other things, the risk of losing her status as a lawful permanent resident and being involuntarily removed from the country if convicted. The district court was not wrong to consider this possibility in its overall assessment of Ms. Garcia's history and characteristics.

---

[1] Section 3142(f)(2)(A) is not at issue here; it provides that if a case involves "a serious risk that [the defendant] will flee," the government or the court can initiate a pretrial detention hearing.

6

Although we discern no clear error in the district court's factual findings related to Ms. Garcia's history and characteristics, we disagree with its conclusion that this factor favors detention. The district court was not required to explicitly mention every piece of evidence, but we are troubled by its failure to acknowledge most of the compelling character evidence in Ms. Garcia's favor. She has no criminal record, no history of drug or alcohol abuse, and no gang affiliation. She has a stable employment history and strong community ties, as evidenced by the letter from her employer and the numerous character letters from her friends and family members. Ms. Garcia also has strong family ties in Colorado—she lives with and financially supports her youngest daughter, and she has two adult daughters and a sister who live nearby. These positive equities significantly outweigh the evidence that Ms. Garcia poses a flight risk. The third factor thus cuts strongly in favor of release.

## D. Nature and Seriousness of the Danger Posed by Release

The district court determined Ms. Garcia's release posed a risk of danger to the community, explaining that "[her] residence was the epicenter of the government's confiscation effort, which included large quantities of drugs (8,128 fentanyl pills, 27.9 grams of methamphetamine, 285.7 grams of heroin, 471.6 grams of cocaine) and illegal firearms (two ghost guns and a stolen gun)." Aplt. App. vol. I at 90–91. The court further noted that the evidence of Ms. Garcia's involvement "in the alleged drug trafficking operation and money laundering" was sufficient to show that her release posed a risk of danger to the community. *Id.* at 91.

7

We reach the opposite conclusion. Ms. Garcia's lack of criminal history indicates that her release would not endanger the community. Her personal characteristics, including her employment history and strong family and community ties, also undercut the idea that she poses a danger to the community. We therefore conclude that this factor weighs in favor of release.

* * *

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Detention is unwarranted in Ms. Garcia's case because three of the four § 3142(g) factors weigh in favor of her release, and we have no doubt that there are release conditions that can reasonably assure her appearance at trial.

## IV.    DISPOSITION

We reverse the district court's pretrial detention order. We remand for the district court to order Ms. Garcia's release pending trial and conduct further proceedings to impose appropriate release conditions. We grant the motion to seal Appellant's Appendix Volume II.

Entered for the Court

Per Curiam

8

No. 25-1370, *United States v. Garcia*
**PHILLIPS**, Judge, dissenting.

I would affirm the detention order because I agree with the district court's conclusion that each of the four § 3142(g) factors weigh in favor of detention.

Regarding the weight-of-the-evidence factor, although the record does not support the finding that Ms. Garcia told her codefendants that the drugs and weapons were taken, the evidence against her is strong. Investigators found a significant quantity of drugs— 8,128 fentanyl pills, 27.9 grams of methamphetamine, 285.7 grams of heroin, and 471.6 grams of cocaine—in Ms. Garcia's apartment. Aplt. App. vol. I at 19. They also found two AR-style ghost guns, extended rifle magazines, drug packaging, and "suspected drug ledgers" there. *Id.* The government also proffered that Ms. Garcia transferred money to her codefendant from "her cash app, her First Bank account, another First Bank account . . . , and her Zelle account." *Id.* at 34. Additionally, the government proffered evidence of a call between Ms. Garcia and the same codefendant from the day before the search. In that call, the codefendant told Ms. Garcia he was "coming over to hustle at the house" and said "I still have time to do the things I have pending there. Be on the lookout. If anything, let me know. Be aware because they are going to be doing transfers in a bit." *Id.* at 34. Therefore, in my view, the weight of the evidence against Ms. Garcia favors detention.

And while the district court did not explicitly mention some of Ms. Garcia's positive equities, such as her lack of criminal history, I have no doubt that it considered them because it found the history-and-characteristics factor presented "a close call." *Id.*

at 90.  The district court was not required to explicitly mention every piece of evidence.  *Cf. United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (stating, in the sentencing context, "We do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." (internal quotation marks omitted)).  I agree with the district court's conclusion that Ms. Garcia's history and characteristics present a close call but ultimately weigh in favor of detention.

Ms. Garcia's lack of criminal history and other positive equities may lessen her risk of danger to the community, but I would nevertheless conclude that the fourth factor favors detention for the same reasons employed by the district court.